# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **HOLLYWOOD PRESBYTERIAN MEDICAL CENTER**<br>1300 North Vermont Avenue<br>Los Angeles, CA  90027<br><br>             Plaintiff,<br><br>      v.<br><br>**ROBERT F. KENNEDY, JR.,** In his Capacity as Secretary of the U.S. Department of Health and Human Services<br>200 Independence Avenue, S.W.<br>Washington, D.C. 20201<br><br>             Defendant. | Case No. |

## COMPLAINT FOR REINSTATEMENT AND SUBSEQUENT JUDICIAL REVIEW OF ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

Hollywood Presbyterian Medical Center (hereinafter "Plaintiff" or the "Hospital") brings this action against defendant Robert F. Kennedy Jr., in his official capacity as the Secretary (the "Secretary") of the Department of Health and Human Services ("HHS"). Based on two recent district court decisions, the Centers for Medicare & Medicaid Services ("CMS") was obligated to calculate a certain reimbursement proxy for the Hospital in a specified way. Yet CMS has not done so, despite having the relevant information. Two final agency determinations wrongly permitted this non-compliance. These arbitrary and capricious final determinations must be set aside, and the Hospital's Medicare reimbursement proxy must be recalculated in accordance with the pending decision of the Supreme Court of The United States ( "Supreme Court").

This is a civil action brought to obtain judicial review of a decision rendered on March 4, 2025 by the Provider Reimbursement Review Board ("PRRB" or "Board"), acting as a component of the United States Department of Health and Human Services ("HHS"), which declared moot the Hospital's request for expedited judicial review (EJR) (see Exhibits G, H, and I, attached).

## INTRODUCTION

1. This action arises under Title XVIII of the Social Security Act, 42 U.S.C. §§1395 *et seq.* (the Medicare Act), the Administrative Procedure Act, 5 U.S.C. §§551 *et seq.* (the APA), and other authorities. The Medicare Fraction (SSI)-Statutory & Systemic Errors issue in this action refers to how certain inpatient hospital days should be addressed for purposes of calculating the Hospital's Medicare fractions of its Medicare disproportionate share hospital ("DSH") payments for fiscal years ("FYs") 1988-2013.

2. The final determinations that underlie Plaintiff's request for EJR were rendered on July 26, 2024 and August 13, 2024, by CMS (attached as Exhibit A). Following the publication date of the latter final decision, the Hospital filed its appeals based on these decisions, which were

assigned PRRB Case Nos. 25-1616 (FYE 1989), 25-1619 (FYE 1990), 25-1622 (FYE 1991), 25-1625 (FYE 1992), 25-1628 (FYE 1993), 25-1630 (FYE 1994), 25-1632 (FYE 1995), 25-1633 (FYE 1996), 25-1634 (FYE 1997), 25-1636 (FYE 1998), 25-1637 (FYE 1999), 25-1639 (FYE 2000), 25-1640 (FYE 2001), 25-1642 (FYE 2002), 25-1643 (FYE 2003), 25-1644 (FYE 2004), 25-1646 (FYE 2004), 25-1647 (FYE 2005), 25-1649 (FYE 2006), 25-1650 (FYE 2007), 25-1652 (FYE 2008), 25-1653 (FYE 2009), 25-1654 (FYE 2010), 25-1656 (FYE 2011), 25-1657 (FYE 2012), 25-1628 (FYE 2013) (attached as Exhibit B). The denial of these appeals (attached as Exhibit C) was made based on a minor procedural error that occurred with respect to the appointment of representative.

**JURISDICTION AND VENUE**

4. This Court has jurisdiction under 42 U.S.C. §1395oo(f) (appeal of final Medicare program agency decision) and 28 U.S.C. §1331 (federal question) and §1361 (mandamus).

5. This civil action is filed within sixty (60) days of the date the Hospitals are deemed to have received the decision of the PRRB dismissing their appeals and declaring their request for EJR moot.

6. Venue lies in this judicial district pursuant to 42 U.S.C. §1395oo(f)(1) and 28 U.S.C. § 1391(e)(1).

**PARTIES**

7. The Hospital, located in Los Angeles, California, is Hollywood Presbyterian Medical Center (Medicare Provider No. 05-0063). At all relevant times, the Hospital had a Medicare provider agreement and was eligible to participate in the Medicare program.

8. Defendant, Robert F. Kennedy Jr., Secretary of HHS, 200 Independence Avenue, S.W., Washington D.C. 20201, is the federal officer responsible for the administration of the Medicare program. Defendant Kennedy Jr. is sued in his official capacity.

**GENERAL BACKGROUND OF THE MEDICARE PROGRAM**

8. The Medicare Act establishes a system of health insurance for the aged, disabled, and individuals with end-stage renal disease. 42 U.S.C. §1395c. The Medicare program is federally funded and administered by the Secretary through CMS (formerly the Health Care Financing Administration ("HCFA")) and its contractors. 42 U.S.C. §1395kk(a); 42 Fed. Reg. 13,262 (Mar. 9, 1977).

9. CMS implements the Medicare program, in part, through rulemaking. *See* 42 C.F.R. §401.108. In addition to the substantive rules published by the Secretary in the Code of Federal Regulations and the Rulings, CMS publishes other, putative interpretive rules implementing the Medicare program, which are compiled in CMS manuals. The Secretary also issues other subregulatory documents relating to the Medicare program, which generally do not have the force and effect of law.

10. The Medicare program has five parts: A, B, C, D, and E. Part C of the Medicare program provides for coverage and payment for, among others, inpatient hospital services on a fee-for-service basis. 42 U.S.C. §§ 1395w-22. Part A services are furnished to Medicare beneficiaries by "providers" of services, including hospitals, that have entered into written provider agreements with the Secretary, pursuant to 42 U.S.C. §1395cc, to furnish hospital services to Medicare beneficiaries. The appeals at issue in this action involve only Part A of the Medicare program.

11. CMS pays providers participating in Part A of the Medicare program for covered services rendered to Medicare beneficiaries through Medicare Administrative Contractors ("MACs"). *See* 42 U.S.C. § 1395kk-1(a). Each Medicare-participating hospital is assigned to a MAC. 42 U.S.C. § 1395kk-1(a)(3)(B). The amount of the Medicare Part A payment to a hospital

for services furnished to Medicare beneficiaries is determined by its MAC based on instructions from CMS. *See* 42 C.F.R. § 405.1803.

## THE MEDICARE HOSPITAL INPATIENT PROSPECTIVE PAYMENT SYSTEM

12. Effective with cost reporting years beginning on or after October 1, 1983, Congress adopted the Hospital Inpatient Prospective Payment System ("IPPS") to reimburse hospitals, including the Hospital, for inpatient hospital operating costs. *See* 42 U.S.C. § 1395ww(d). Under IPPS, Medicare payments for hospital operating costs are not based directly on the costs actually incurred by the hospitals. Rather, they are based on predetermined, nationally applicable rates based on the diagnosis of the patient determined at the time of discharge from the inpatient stay, subject to certain payment adjustments. *See id.* One of these adjustments is the Medicare "disproportionate share hospital" or "DSH" payment. *See* 42 U.S.C. §1395ww(d)(5)(F).

## THE MEDICARE DSH ADJUSTMENT

13. Hospitals that treat a disproportionately large number of low-income patients are entitled by statute to a Disproportionate Share Hospital (DSH) adjustment, in addition to standard Medicare payments. 42 U.S.C. §1395ww(d)(5)(F).

14. The DSH program was enacted by Congress in the Consolidated Omnibus Budget Reconciliation Act of 1985 and took effect beginning with discharges on or after May 1, 1986. Pub. L. No. 99-272, § 9105, 100 Stat. 158-60 (Apr. 7, 1986).

15. Congress enacted the DSH adjustment in recognition of the relatively higher costs associated with providing services to low-income patients. These higher costs have been found to result from the generally poorer health of these patients. The DSH adjustment provides additional Medicare reimbursement to hospitals for the increased cost of providing services to their low-income patients.

16. With respect to the cost year at issue, there were two methods of determining qualification for a DSH adjustment: the more common "proxy method" (42 U.S.C. §1395ww(d)(5)(F)(i)(I)) and the less common "Pickle method" (42 U.S.C. §1395ww(d)(5)(F)(i)(II)). The Hospital's DSH calculations at issue were made using the proxy method, under which entitlement to a DSH adjustment, as well as the amount of the DSH payment, is based on the hospital's "disproportionate patient percentage" or "DPP." 42 U.S.C. §1395ww(d)(5)(F)(v) and (vi).

17. The DPP is the sum of two fractions, which are designed to capture the number of low-income patients a hospital serves on an inpatient basis by counting the number of days that low-income patients receive inpatient services in a given fiscal year ("inpatient days"). 42 U.S.C. §1395ww(d)(5)(F)(vi). Thus, the two fractions serve as a "proxy" to determine low-income patients, rather than having CMS count the actual number of those patients.

18. The first fraction, referred to as the "Medicare Fraction," accounts for inpatients who are current Medicare Part A recipients and also entitled to Supplemental Security Income (SSI) benefits, a federal low-income supplement. The Medicare Fraction is defined by statute as follows:

> [T]he fraction (expressed as a percentage), the numerator of which is the number of such hospital's patient days for such period which were made up of patients who (for such days) were entitled to benefits under part A of this subchapter and were entitled to supplementary security income benefits (excluding any State supplementation) under subchapter XVI of this chapter, and the denominator of which is the number of such hospital's patient days for such fiscal year which were made up of patients who (for such days) were entitled to benefits under Part A of this subchapter[.]

42 U.S.C. §1395ww(d)(5)(F)(vi)(I). The Medicare Fraction, therefore, is the percentage of a hospital's Medicare Part A-entitled inpatients who were also entitled to SSI benefits at the time

that they were receiving inpatient services at the hospital. The Medicare Fraction is at issue in this case.

19. The second fraction, referred to as the "Medicaid Fraction," is defined by statute as follows:

> [T]he fraction (expressed as a percentage), the numerator of which is the number of the hospital's patient days for such period which consist of patients who (for such days) were eligible for medical assistance under a State plan approved under title XIX, but who were not entitled to benefits under part A of this subchapter, and the denominator of which is the total number of the hospital's patient days for such period.

42 U.S.C. §1395ww(d)(5)(F)(vi)(II).

20. The Medicaid Fraction, therefore, is intended to account for hospital inpatients "who were not entitled to benefits under [Medicare] [P]art A," but who were "eligible for medical assistance" under the Medicaid State plan at the time that they were receiving inpatient services at the hospital.

21. The Secretary's inclusion in the Hospital's Medicare Fractions' *denominators* of days when the patients are eligible for Medicare Part C (hereinafter "Part C days") and exclusion from the Hospital's Medicare Fractions' *numerators* of days associated with individuals who were entitled to SSI but who were not assigned payment status codes CO1, MO1 or MO2 (hereinafter "SSI non-paid days") for fiscal years 1988-2013 is at the heart of this action.

## LITIGATION AND REGULATION REGARDING PART C DAYS

21. The fiscal year (FY) 2005 IPPS final rule, which was determined to be procedurally invalid by the United States Court of Appeals for the D.C. Circuit in 2014, required the inclusion of Part C days in the Medicare Fraction. *See Allina Health Servs. v. Sebelius*, 46 F.3d 1102 (D.C. Cir. 2014) (Allina I). While this litigation was pending, the Secretary re-proposed its policy on Part C days and finalized its policy, giving it prospective effect, effective with discharges on or

after October 31, 2013, in the FY 2014 IPPS final rule. *See Medicare Program; Hospital Inpatient Prospective Payment Systems for Acute Care Hospitals and the Long-Term Care Hospital Prospective Payment System and Fiscal Year 2014 Rates; Quality Reporting Requirements for Specific Providers; Hospital Conditions of Participation; Payment Policies Related to Patient Status*, 78 Fed. Reg. 50,496, 50,620 (Aug. 19, 2013) (the "2013 Rule"). Notwithstanding the ruling in Allina I, the Secretary continued to direct its MAC to place Part C days in the Medicare Fraction for discharges prior to October 31, 2013. Plaintiff hospitals in *Azar v. Allina Health Services*, 139 S. Ct. 1804 (June 3, 2019) (Allina II), challenged published Medicare Fractions calculated with Part C days included in their denominators for FY 2012. The Supreme Court held that CMS was required to engage in notice-and-comment rulemaking before assuming an "avowedly gap-filling policy" of including Part C patient days in the Medicare fraction for purposes of calculating the DPP.

22.     The Supreme Court was presented with the issue of interpreting the DSH statue's text with regard to the meaning of "entitled" in *Becerra v. Empire Health Foundation, for Valley Hospital Medical Center*, 597 U.S. 424, 435 (June 24, 2022). In its decision, the Court held that, with respect to non-pay days (i.e., exhausted days and Medicare Secondary Payer (MSP) days) "being 'entitled' to Medicare benefits . . . means—in the [DSH] fraction descriptions, as throughout the statute—meeting the basic statutory criteria." concluded that the "[t]ext, context, and structure all support calculating the Medicare fraction HHS's way. In that fraction, individuals 'entitled to [Medicare Part A] benefits' are all those qualifying for the program." *Empire*, 597 U.S. at 445. CMS did not adopt this interpretation of "entitled" regarding SSI benefits, however; thus it continues to count a patient as "entitled" to SSI benefits only if a patient received an SSI cash payment for the month of their hospital stay. 75 Fed. Reg. 50,042, 50,280-281 (Aug. 16, 2010).

23. The most recent regulatory issuance on the matter of Part C days occurred when CMS issued its final rule, CMS-1739-F, following the Supreme Court's ruling in *Allina*, on June 9, 2023. This final rule retroactively treats Part C enrollees as "entitled to Part A" for cost reporting periods starting before October 1, 2013, essentially retrospectively adopting its FY 2014 IPPS final rule regarding the treatment of Part C days while circumventing the requisite notice-and-comment rulemaking under *Allina*. Under this rule, a hospital's DPP will be calculated by including Part C days in the Medicare fraction, as CMS considers Part C enrollees to be "entitled to benefits under part A." *See* Exhibit A.

24. On June 10, 2024, certiorari was granted by the Supreme Court for *Advocate Christ Medical Center v. Becerra*, in which the United States Court of Appeals for the District of Columbia Circuit upheld the Secretary's interpretation of "entitled to [SSI]". The petitioners, *Advocate Christ Medical Center et. al.*, have claimed that because the phrase "entitled … to benefits" appears twice in the same sentence of the Medicare Act, it should mean the same thing for both Medicare part A and SSI, and thus the petitioners' interpretation regarding the inclusion of SSI eligible days should be adopted by CMS. *Advocate Christ Medical Center, et al. v. Becerra*, No. 22-5214 (U.S. 2023), Writ of Certiorari to the United States Court of Appeals For The District Of Columbia Circuit. The case has been fully briefed, the Court heard the oral argument on November 5, 2024, and a decision is pending.

## THE RELEVANT MEDICARE APPEALS PROCESS

25. At the close of its fiscal year, a provider must submit a cost report to the MAC showing the costs it incurred during the fiscal year and the portion of those costs to be allocated to Medicare. 42 C.F.R. §413.20. Under the Medicare program, each hospital's MAC is required to analyze and audit the hospital's annually submitted Medicare cost report and issue a Medicare

Notice of Amount of Program Reimbursement (NPR), which informs the hospital of the final determination of its total Medicare reimbursement for the hospital's fiscal year. 42 C.F.R. § 405.1803. In addition to including costs on its cost report, a hospital is also required to make a claim, or alternatively self-disallow, for any adjustment to its basic IPPS payment adjustment, such as the DSH adjustment. 42 C.F.R. § 413.24(j).

33. If a hospital is dissatisfied with its MAC's final determination (or any revised final determination) of the hospital's total Medicare program reimbursement for a fiscal year, as reflected in the NPR, and the hospital satisfies the amount in controversy requirements, the hospital has a right to obtain a hearing before the Board by filing an appeal within 180 days of receiving its NPR (or any revised NPR). 42 U.S.C. §1395oo(a); 42 C.F.R. § 405.1835(a). In addition to having the authority to make substantive decisions concerning Medicare reimbursement appeals, the Board is authorized to decide questions relating to its jurisdiction and procedure. *See* 42 U.S.C. §1395oo. Further, the Board is required to "affirm, modify, or reverse . . . ***and*** to make any other revisions on matters covered by such cost report[.]" *See* 42 U.S.C. § 1395oo(d) (emphasis added). That is, the Board cannot avoid making necessary revisions on matters properly before it.

34. The decision of the Board on substantive or jurisdictional issues constitutes final administrative action unless the Secretary reverses, affirms, or modifies the decision within 60 days of the hospital's notification of the Board's decision. 42 U.S.C. § 1395oo(f)(1); 42 C.F.R. §§ 405.1875, 405.1877. The Secretary has delegated its authority under the statute to review Board decisions to the CMS Administrator. *See* 42 C.F.R. §§ 405.1875, 405.1877. Thus, the Secretary's final administrative decision for purposes of judicial review is either the decision of the Board or

the decision of the CMS Administrator after reviewing the Board's decision.  *See* 42 C.F.R. § 405.1877(a)(2).

35.   A hospital may obtain judicial review by filing suit within 60 days of receipt of the Secretary's final administrative decision in the United States District Court for the judicial district in which the hospital is located or in the United States District Court for the District of Columbia. 42 U.S.C. §1395oo(f)(1).  The Secretary is the proper defendant in such an action.  *See* 42 C.F.R. § 405.1877(a)(2).  Under 42 U.S.C. §1395oo(f)(2), interest is to be awarded in favor of the prevailing party in an action brought under 42 U.S.C. §1395oo(f).  Under 42 U.S.C. § 1395g(d), CMS is required to pay interest on underpayments to Medicare providers, if the underpayment is not paid within thirty days of a "final determination."

36.   Judicial relief is also available under the equitable remedy of mandamus where a hospital has a clear right to the relief sought and the Secretary has a defined and non-discretionary duty to honor that right.  *Monmouth Med. Ctr. v. Thompson*, 257 F.3d 807, 813 (D.C. Cir. 2001); *Lutheran Med. Ctr. v. Thompson*, 520 F. Supp. 2d 414, 419 (E.D.N.Y. 2007).

37.   Jurisdiction is also available under 28 U.S.C. § 1331 where the agency renders a final determination and there is no administrative appeal available for that determination.  *Am. Chiropractic Ass'n v. Leavitt*, 431 F.3d 812, 816 (D.C. Cir. 2005).

## APPLICABILITY OF THE APA TO MEDICARE APPEALS

38.   Under 42 U.S.C. §1395oo(f)(1), an action brought for judicial review of final agency action involving PRRB appeals "shall be tried pursuant to the applicable provisions under chapter 7 of title 5" of the U.S. Code, which contains the Administrative Procedure Act (APA). Under the APA, a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. §706(2)(A).  Further, a "reviewing court shall . . . hold unlawful

and set aside agency action, findings, and conclusions found to be . . . unsupported by substantial evidence in a case . . . reviewed on the record of an agency hearing provided by statute[.]" 5 U.S.C. §706(2)(E).

## SPECIFIC FACTS PERTAINING TO THIS CASE

26. On January 22 and 23, 2025, Quality Reimbursement Services (hereinafter "QRS") filed 26 individual appeals on the Hospital's behalf as its duly appointed "Provider Representative", as recognized by the Board in Exhibit C. These appeals were submitted with the CMS transmittals 12747 and 12785, attached as Exhibit A to this Complaint, as their final determinations to form the basis of each appeal. On January 23, 2025, the Board issued an Acknowledgement & Critical Due Dates Notices ("ACDD") (one of which is attached as Exhibit F) in all 26 cases. These notices included requests for an updated Letter of Representation due to the initially submitted Letter of Representation being over 4 years old at the time of submission. These requests set a submission deadline of February 7, 2025.

27. On February 6, 2025, QRS requested a 30-day extension (attached as Exhibit D) for submitting an updated Letter of Representation, due to several circumstances, including turnover at the Hospital.

28. QRS submitted Exhibits G, H, and I on February 27, 2025 for the Board appeals listed in Exhibit B, which were subsequently declared moot in the Board's dismissal notice of those appeals issued on March 4, 2025.

29. Following the Board's dismissal, QRS submitted a request to reinstate (attached as Exhibit E) the appeals listed in Exhibit B. Included with this request was a new Letter of Representation, with the remedies requested by the Board in their initial ACDD notices, as well as further explanation for why the updated Representation Letter deadline was missed. In addition to the reason given in Exhibit D, there were "*extraordinary circumstances*" outside of the control of

QRS that contributed to the February 7, 2025 deadline being missed. The Board has to date not responded to QRS's request to reinstate its appeals, and thus the hospital seeks judicial review of the March 4 final decision of the Board dismissing the Hospital's appeals.

30. Specifically, in January of 2025, QRS headquarters was subject to, and followed, emergency evacuation orders due to the Eaton fire disaster. Additionally, the disaster resulted in employees having to flee their homes, with one key employee's home being destroyed by the conflagration.

31. Due to the emergency conditions created by the fire disaster and its extensive impact on operations, manual operations recovery procedures caused several Board-issued deadlines to be missed, including the February 7, 2025 submission deadline.

32. Further, QRS claimed in Exhibit E that the Board's dismissal of the appeals listed in Exhibit B seemed to be punitive, and an extreme remedy considering the relatively minor issues that were highlighted by the Board in its ACDD notices. In its March 4, 2025 Notice of Dismissal (Exhibit C), the Board does in fact recite the requirements for a Letter of Representation ("LOR") set forth in its Board Rule 5.4; as clearly noted, <u>nowhere in that Rule does it require, much less mention</u> that an LOR previously submitted and accepted by the Board *need* be updated and if so, when and under what circumstances. LOR's are most often signed by a member of a hospital's administration, the "authorizing official" <u>at the time of submission</u>, typically the CEO or CFO. It is common knowledge for those who observe the hospital industry that administrations, and in particular CEO's or CFO's quite often undergo shifts or changes in leadership from one year to the next; it is the unique nature of that industry. That is precisely what transpired in the instant matter as one CEO was replaced by another. The fact Board Rule 5.4 imposes no such requirement that "[a] letter of representation should generally be obtained when preparing the appeal to be filed

with the Board rather than years in advance…" as stated in Exhibit F also points to the arbitrary and capricious nature of the Board's dismissal of the appeals listed in Exhibit B. QRS had a longstanding relationship with the Hospital and there was no reason to believe that the Hospital had severed its relationship with QRS simply because an official was no longer employed at the Hospital. Courts do not question an attorney's representation of a client simply because the engagement letter was signed years previously.

## Count I

### Judicial Review Under the Medicare Act and the APA
### (The Board's Actions are Arbitrary, Capricious, an Abuse of Discretion, Otherwise Contrary to Law, and Unsupported by Substantial Evidence)

33. The Hospital incorporates by reference all preceding paragraphs of this Complaint.

34. The APA prohibits agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. §706(2)(A), or that is "unsupported by substantial evidence," *id.* §706(2)(E).

35. The Board's dismissal of the appeals listed in Exhibit B was arbitrary and capricious, an abuse of discretion, and otherwise contrary to the Medicare Act.

## Count II

### Judicial Review under 42 U.S.C. § 1395oo(f)(1), 28 U.S.C. § 1331 and the APA
### (CMS's Determination was Arbitrary, Capricious, an Abuse of Discretion, Otherwise Contrary to Law, and Unsupported by Substantial Evidence)

36. The Hospital incorporates by reference all preceding paragraphs of this Complaint.

37. CMS' transmittals 12747 and 12785 are each a final determination within the meaning of 42 U.S.C. § 1395oo(a)(1)(A)(ii) for which the Hospital is entitled to EJR pursuant to 42 U.S.C. § 1395oo(f)(1) because the Board has jurisdiction over the Hospital's appeals, and it does not have the authority to declare invalid transmittals 12747 and 12785.

38. Alternatively, if transmittals 12747 and 12785 are not each a final determination within the meaning of 42 U.S.C. § 1395oo(a)(1)(A)(ii), they are final determinations for which there is no administrative appeal. Therefore, this Court has jurisdiction to hear the Hospital's appeal of this final determination. *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667 (1986).

39. The APA prohibits agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. §706(2)(A), or that is "unsupported by substantial evidence," id. §706(2)(E).

40. CMS's issuance of transmittals based on a rule that is contrary to law, which bound CMS, was arbitrary and capricious, an abuse of discretion, and contrary to the Medicare Act.

## REQUEST FOR RELIEF

For these reasons, the Hospital respectfully requests that this Court enter an order:

a. Reversing the Board's dismissal of the Hospital's appeals listed in Exhibit B.

b. Following the reinstatement of the Hospital's appeals listed in Exhibit B, directing the Secretary to direct the Board to grant EJR based on Exhibits G, H, and I that were submitted by QRS on behalf of the Hospital.

c. Subsequently, granting a stay of the Judicial Review pending the Supreme Court's decision in decision in *Advocate Christ Medical Center, et al. v. Becerra,* No. 22-5214 (U.S. 2023).

d. Awarding the Hospital's costs and reasonable attorneys' fees, and for interest and such other and further relief that the Court deems appropriate.

Dated: April 13, 2025                              Respectfully submitted,

                                                   */s/ Alan J. Sedley*

                                                   Alan J. Sedley, Esq. Bar No. OH0017
                                                   18880 Douglas, Suite 417
                                                   Irvine, CA 92612
                                                   Tel: (818) 601-0098
                                                   *Attorney for the Hospital*